798 So.2d 987 (2001)
EXECUTONE OF CENTRAL LOUISIANA, INC.
v.
HOSPITAL SERVICE DISTRICT NO. 1 OF TANGIPAHOA PARISH d/b/a North Oaks Medical Center and Tangipahoa Parish Government.
No. 1999 CA 2819.
Court of Appeal of Louisiana, First Circuit.
May 11, 2001.
Writ Denied September 28, 2001.
*989 Michael D. Hebert, Lafayette, LA, for plaintiffappellant, Executone of Central Louisiana, Inc.
Office of the District Attorney, Amite, LA, for defendant, Tangipahoa Parish Government.
Alton B. Lewis, Ashley Edwards-Sandage, Hammond, LA, for defendantappellee, Hospital Service District No. 1 of Tangipahoa Parish d/b/a North Oaks Medical Center.
BEFORE: PARRO, FITZSIMMONS, and GUIDRY, JJ.
FITZSIMMONS, Judge.
Plaintiff, Executone of Central Louisiana, Inc. (Executone), sued Hospital Service District No. 1 of Tangipahoa Parish d/b/a North Oaks Medical Center (hospital). In its suit, Executone asserted that the hospital improperly awarded a contract to Hill-Rom. The trial court found that the hospital did not violate the provisions of the Political Subdivisions Telecommunications and Data Processing Procurement Act, La.R.S. 38:2234, et seq., and dismissed Executone's suit. Executone appealed. We affirm.
Specifically, the hospital requested proposals for a nurse call/information system. In response to the requests, two companies, Executone and Hill-Rom, submitted proposals. Although Executone's quoted price was lower, the contract was awarded to Hill-Rom. On appeal, Executone maintains it should have been awarded the contract, and requests damages. In support, it makes the following arguments:
1. Executone met all specifications at the lowest price, except for a prohibited "closed specification."
2. The hospital improperly used a secret assessment of Executone's system and improperly evaluated the offered system.
3. The request for proposals (RFP) violated La.R.S. 38:2237A(7), which requires the RFP to "indicate the relative importance of price and other evaluation factors...." On the issue of sufficient evaluation criteria, the trial court erred in excluding the testimony of plaintiffs witness.
4. Hill-Rom was not a licensed contractor, which prohibited the contract under La.R.S. 37:2150.1(4), 2160A(1), and 2163.

THE ACT
Interpretations of the provisions of the Political Subdivisions Telecommunications and Data Processing Procurement Act (Act), La.R.S. 38:2234, et seq., necessary to the resolution of this case, are issues of first impression. The Act has specific provisions that trump the general or similar provisions from our more familiar public bid law. Under the Act, the governing political authority is vested with sufficient discretion to maneuver the increasingly complex byways of multi-optioned, invasive, and expensive technology.
After a RFP is issued pursuant to the Act and proposals are received, the governing *990 authority decides who is a "responsible offerer."[1] The governing authority then makes its assessments of the proposals. To determine which proposal best fits its particular needs, the governing authority decides which proposal is not only advantageous to the governing authority, but which proposal is the "most advantageous." La.R.S. 38:2237A(8).
The selection decision could vary. The range is expansive: from some, few, or no "most advantageous" proposals for the specific needs of the governing authority. This range provides the governing authority with the ability to decline the selection of a system, even though that system might be suitable. Rejection of one or all of the proposals may be founded on a finding that the system proposed simply does not meet as many of the present needs, or perhaps more importantly, the future needs of the authority. In a hospital setting, once these sophisticated systems are incorporated, it is difficult to efficiently replace a standing technological system. Thus, the traditional concept under the bid process, that the "lowest responsible bidder," or "last man standing," receives the contract, is not embraced or incorporated by the Act. See Haughton Elevator Division v. State, Division of Administration, 367 So.2d 1161, 1165 (La. 1979). The question as to which proposal is the "most advantageous" does not depend on the number of remaining offerers from the proposal process, but rather on the reasonable perceptions of the governing authority. In deciding these cases, such realities must wield their influence.

CLOSED SPECIFICATION
Closed specifications require a specific brand or product be used "to the exclusion of all other products of apparent equal quality and utility." La.R.S. 38:2296A (emphasis added). A closed specification is prohibited by La.R.S. 38:2290. The statutory provisions on closed specifications were meant to prohibit specifications that excluded other viable choices of products. However, those statutory provisions do not bar the state from obtaining needed one-of-a-kind products or breakthrough technological systems. Whether Hill-Rom is improperly refusing to share its discoveries with other companies is not an issue before this court.
The feature objected to by Executone, the bedrail monitoring interface, is allegedly only offered by Hill-Rom. We found no evidence that a product of "apparent equal quality and utility" was available. La.R.S. 38:2296A. Thus, by definition, the Hill-Rom feature was not a closed specification. The request for the exclusive Hill-Rom feature does not foreclose any features or brands of equal value.

SUFFICIENCY OF EVALUATION CRITERIA
La.R.S. 38:2237A(7) provides that the "request for proposals will indicate the relative importance of price and other evaluation factors" as well as "the criteria to be used in evaluating the proposals...." The hospital's RFP stated that "[b]oth price and features will be the determining factors," but "the vendor capable of supplying the desired attributes will receive more consideration."
Executone produced a witness learned in the method used by the State of Louisiana to present evaluation criteria for its RFPs. However, the witness did not profess *991 to espouse a set method for political subdivisions. Nor did the trial court exclude the witness's testimony on the sufficiency of evaluation criteria issue. Rather, in its reasons for judgment, the trial court found that the testimony was irrelevant and not determinative of whether the hospital, a political subdivision, provided sufficient information in this particular case.
We disagree with the trial court on the finding of relevancy. The procedures adopted by the state to meet requirements of like statutes was relevant to the issue of what might qualify as sufficient criteria. However, the testimony did not exclude the method chosen by the hospital, or render it unreasonable or insufficient. The trial court did not err by choosing to reject the witness's opinion.
Contrary to the argument of Executone, La.R.S. 38:2237A(7) does not require the use of a formula, percentage chart, or specific form. Nor is it necessary for an outsider to be able to correctly choose the winner of the contract merely by reading the proposals. Based on the evaluation set out in the RFP, the hospital has the discretion to choose "the responsible offerer whose proposal is determined... to be the most advantageous" to the hospital. La.R.S. 38:2237A(8). It would be part of the hospital's discretion to decide which offered features best met the listed desired features. The hospital owes a duty to the public fisc and well-being to consider any differences revealed by comparison of the two proposals. This is the method by which the hospital chose the "most advantageous" proposal.
The hospital designated both price and listed features as the two evaluation factors to be used. However, the most consideration was to be given to a company best able to supply "the desired attributes...." We note that any offered feature, cluster of features, or specific attributes might outweigh any differences in a quoted price. However, this fact could not be known, even to the hospital, until the proposals were submitted and reviewed. Although the hospital's RFP did not provide percentages, a formula, or decision flow charts, the RFP's evaluation criteria was adequate.

SECRET OR IMPROPER ASSESSMENTS
Executone claims that a "secret assessment" of an Executone system and "secret use" of the "secret assessment" in the evaluation of its proposal violated its due process rights. The "secret assessment" consisted of formulated opinions of hospital personnel, primarily concerning maintenance and repair of the hospital's existing Executone system. Executone also argues that its offer was improperly assessed or evaluated based on observations by the hospital's nurses that predated and went beyond the RFP.
The hospital's nurses and other personnel based their opinions on observations of a system selected by Executone and demonstrated by Executone. Executone made a presentation in the hospital, and sanctioned a visit by the nurses to another hospital for further observation of an Executone system. As a party to service calls to the hospital, to maintain or repair the hospital's existing Executone system, Executone was aware of such calls. Thus, Executone knew, or should have known, that the nurses and other personnel would assess the systems and form opinions. For these reasons, we find no basis for Executone's claim of "secret assessments."
The nurses did not prepare the RFP or evaluate the offers. However, the input from the nurses was considered by the hospital, before it issued the RFP and before it awarded the contract. To exercise *992 the proper discretion, the hospital must compare differences in the operation and quality of offered features. It would be a violation of public trust for the hospital to ignore available comparisons and opinions of the different attributes of the features offered by the two vendor-offerers, even if the information pre-dated the RFP.
The nurses, from observation and comparison, may have formed opinions on functions and features not listed in the RFP. However, our focus is not on all the possible opinions or problems observed by the nurses before preparation and issuance of the RFP. The inquiry is whether the hospital had a reasonable basis for finding the Hill-Rom proposal was the "most advantageous," based on a proper evaluation of the factors provided in the RFP. See La.R.S. 38:2237A(7) & (8).
The RFP requested proposals for a "Nurse Call/Information System." The RFP specified that the proposal address certain categories of features of interest to the hospital. Both offerers addressed the categories, but offered different features in some categories, or similar features with differing attributes; for example, priority sequencing and automatic cancellation of calls by the nurse call system. Executone labeled some of these differences as features not listed in the RFP, rather than additional features or attributes offered by Hill-Rom.
Admittedly, Executone could not supply the bedrail monitoring interface feature offered by Hill-Rom. The hospital representatives also compared other offered features and found that Executone features, or specific attributes of Executone features, were not always as good, or as useful, as the Hill-Rom features offered in the same RFP category. For example, the requested hands-free operation feature offered by Executone was not as handsfree as the Hill-Rom system. Additionally, maintenance and service were listed in the RFP. Therefore, past performance on service calls would not have been an improper consideration. Based on comparisons of the functions and features offered by the two companies in response to the RFP, recommendations of the superiority of the Hill-Rom offer were made to the hospital representatives who would vote on the award of the contract.
Although Executone submitted the lowest price, the trial court found that the Executone system did not meet all the specifications of the RFP, and that the hospital, through comparison of the features offered by the two systems, determined that Hill-Rom's offer supplied better performing features. From our review, we find that the record provides a reasonable basis for (1) a determination that the Hill-Rom proposal was the "most advantageous" for the hospital, and (2) the decision made after a comparison of the offered features, and not based on "secret assessments," improper use of the nurses' assessments, or improper evaluations. The comparisons of offered functions and features were not tainted merely because the comparers were not the same people who drafted the RFP. Nor were evaluations of features offered by Hill-Rom rendered invalid because Executone offered different or fewer features in some categories. Certainly, we see no basis for the due process violation claimed by Executone.

LICENSE AND STANDING TO OBJECT
Executone argues that Hill-Rom's lack of a Louisiana contractor's license rendered the contract an absolute nullity. Thus, Executone argues, it was the only valid offerer and should be awarded damages for loss of the contract. In response, *993 the hospital asserts that the statutory authority to sanction, or invalidate, for failure to have a license is reserved for governmental entities. The hospital further argues that Executone, as an opposing bidder or offerer, had no standing to attack the validity of the contract under La.R.S. 37:2160-63. Executone counter-argues based on the jurisprudence and Civil Code articles 7, 2030, and 2033, which mandate the voiding of a contract awarded in contravention of prohibitory law.

APPLICABLE LEGAL PRECEPTS
The Act does not contain a specific provision that requires or waives a Louisiana contractor's license. Without a specific provision for guidance, other portions of the law governing public contracts, like the licensure provisions, may be applicable. See La.C.C. art. 13.
Public contracts may be subject to various statutes found in Titles 37 and 38. The Telecommunications and Data Processing Procurement by Political Subdivisions provisions appear in Title 38, Chapter 10, Part II-B, section 2234, et seq. For violations of Part II requirements, "any interested party may bring suit" for injunctive relief, and seek to have the contract nullified. La.R.S. 38:2220B; see also La.R.S. 38:2220.1-2220.4. Unlicensed contractors are prohibited from entering into certain public contracts "by bid or through negotiation." La.R.S. 37:2163A(1). Additionally, for certain types of contracts, "no proposal forms or specifications shall be issued to anyone except a licensed contractor...." La.R.S. 37:2163B. Contractors, subject to these requirements, are defined in La.R.S. 37:2150.1(4).
Persons, legal and natural, may waive personal rights established by law, but cannot by their contracts violate prohibitory law or derogate from law enacted for the protection of the public interest. La. C.C. art. 7; West Baton Rouge Parish School Board v. T.R. Ray, Inc., 367 So.2d 332, 334-35 (La.1979); E.L. Burns Co., Inc. v. Cashio, 302 So.2d 297, 299-300 (La. 1974) (citing La.C.C. art. 11 and 12 (1970), now La.C.C. art. 7); Alco Collections, Inc. v. Poirier, 95-2582, pp. 11-12 (La.App. 1 Cir. 9/27/96), 680 So.2d 735, 742-743, writ denied, 96-2628 (La.12/13/96), 692 So.2d 1067; Henderson v. Kentwood Spring Water, Inc., 583 So.2d 1227, 1232 (La.App. 1st Cir.1991); Hagberg v. John Bailey Contractor, 435 So.2d 580, 584-85 (La.App. 3d Cir.1983), writs denied, 444 So.2d 1245 (La.1984). A contract in violation of a prohibitory law is absolutely null. Id; La. C.C. art.2030.

STANDING
Based on the jurisprudence and Civil Code articles, we find that the award of a contract to an unlicensed contractor, when a license is statutorily required, would be an award in contravention of prohibitory law. See West Baton Rouge Parish School Board, 367 So.2d at 335 (architect's license); Towne Center, Limited v. Keyworth, 618 So.2d 467, 470-71 (La.App. 4th Cir.1993) (real estate license); see generally Airline Construction Company, Inc. v. Ascension Parish School Board, 568 So.2d 1029, 1032 (La.1990) (provisions of public contract law are prohibitory law). The court, on its own motion, and any interested person, may attack a contract as an absolute nullity on those grounds. See La.C.C. art.2030; La. R.S. 38:2220B. Thus, Executone had standing to attack a contract awarded to what it believed to be an unlicensed contractor without authority to submit a proposal.

LICENSE
In today's environment, traditional concepts change. The vendor or lessor of technological or telecommunications *994 equipment would not customarily qualify as a contractor under La.R.S. 37:2150.1(4). Those license provisions address the more traditional concepts of "brick and mortar" construction. The licensed project covered by those provisions must entail construction or substantive improvement of a building, highway, etc. Id. However, this record does not contain sufficient evidence for us to determine whether this specific project, and the services offered by Hill-Rom, would come under the definition of a contractor and be subject to mandatory licensure. Thus, based on this record, we cannot say that Hill-Rom was required to have a contractor's license.

CONCLUSION
For these reasons, we find that the contract was validly awarded. We affirm the judgment. The costs of the appeal are assessed to plaintiff-appellant, Executone.
AFFIRMED.
GUIDRY, J., dissents and assigns reasons.
PARRO, J., concurs.
GUIDRY, J., dissenting.
I disagree with the majority's treatment of the contractor licensing provisions. First, I disagree with the characterization of the licensing provisions as being limited to "brick and mortar" construction. In fact, I believe the statute is broad enough to encompass the project at issue herein, specifically in that it applies to "furnishing labor together with material or equipment or installing the same...." Furthermore, the record contains sufficient evidence to establish that Hill-Rom is a contractor subject to mandatory licensure; and therefore, the contract awarded it is an absolute nullity. For this reason, I respectfully dissent.
NOTES
[1] We note that the legislature chose the word "offerer," for the Act, a different term than "bidder." La.R.S. 38:2237A(8). The difference denotes the status under which an entity seeks public business.