# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2021 CA 1367

## MEDIMPACT HEALTHCARE SYSTEMS, INC.

### VERSUS

## STATE OF LOUISIANA, DIVISION OF ADMINISTRATION, JAY DARDENNE, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF DIVISION OF ADMINISTRATION, STATE OF LOUISIANA, OFFICE OF GROUP BENEFITS, STATE OF LOUISIANA, OFFICE OF STATE PROCUREMENT

Judgment Rendered: ___'JUN 0 3 2022___

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket Number 705290

Honorable Donald R. Johnson, Judge Presiding

\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| J. Wendell Clark<br>Mark L. Barbre<br>Baton Rouge, LA | Counsel for Defendant/Appellant<br>State of Louisiana, Office of Group<br>Benefits |
| Sean T. Porter<br>Baton Rouge, LA | Counsel for Defendant/Appellant<br>State of Louisiana, Division of<br>Administration and Jay Dardenne,<br>in His Official Capacity as<br>Commissioner of Division of<br>Administration |
| Carlos A. Romanach<br>Baton Rouge, LA | Counsel for Defendant/Appellant<br>State of Louisiana, Office of State<br>Procurement |
| Larry Demmons<br>Metairie, LA<br>and<br>A.J. Herbert III<br>Jennifer Warden Herbert<br>New Orleans, LA | Counsel for Intervenor/Appellant<br>CaremarkPCS Health, LLC |

Christopher K. LeMieux
Donald C. Douglas, Jr.
Johanna Elizabeth Lambert
New Orleans, LA

Counsel for Plaintiff/Appellee,
MedImpact Healthcare Systems,
Inc.

\*\*\*\*\*\*\*\*\*\*\*\*\*

BEFORE: WHIPPLE, C.J., PENZATO AND HESTER, JJ.

**WHIPPLE, C.J.**

Defendants-appellants, State of Louisiana, Division of Administration ("DOA"), Jay Dardenne, in his official capacity as Commissioner of Division of Administration ("the Commissioner"), State of Louisiana, Office of Group Benefits ("OGB"), and State of Louisiana, Office of State Procurement ("OSP") (collectively "the State Defendants"), and intervenor-appellant, CaremarkPCS Health, LLC ("CVS"), appeal the July 16, 2021 judgment, as amended by the March 26, 2022 judgment, of the district court, acting in an appellate capacity in response to a petition for judicial review filed on behalf of a rejected proposer, plaintiff-appellee, MedImpact Healthcare Systems, Inc. ("MedImpact"). The district court's judgment reversed the decision of the Commissioner, which upheld OGB's award of a state contract for pharmacy benefits manager ("PBM") services to CVS, and ordered that the "proposed contract award to ... [CVS] ... be reversed and cancelled." For the following reasons, we reverse.

## FACTS AND PROCEDURAL BACKGROUND

On February 21, 2020, OGB issued Request for Proposals No. 3000014397 ("the RFP") for a two-year term from January 1, 2021 through December 31, 2023, regarding PBM services for certain self-funded health plans offered by OGB. Since 2014, MedImpact had been the incumbent provider of OGB's PBM services; however, those contracts were set to expire on December 31, 2020.

Pursuant to Section 1.28 of the RFP, the evaluation of proposals was to be accomplished by an evaluation committee ("Evaluation Team" or "Evaluation Committee"). Section 1.28 permitted the Evaluation Team to "consult subject matter expert(s) to serve in an advisory capacity regarding any proposer or proposal," and provided that "[s]uch input may include, but not be limited to, analysis of Proposer financial statements, review of technical requirements, or preparation of cost score data."

3

As to the evaluation and review of proposals, Section 3.1 of the RFP stated that proposals passing the mandatory requirements review would "be evaluated based on information provided in the Proposal" according to the following criteria:

| CRITERIA | MAXIMUM SCORE |
|---|---|
| PHASE 1: TECHNICAL APPROACH | |
| Approach and Methodology | 325 |
| Corporate Experience and Staff Qualifications | 205 |
| TECHNICAL APPROACH SCORE | 530 |
| Hudson/Veteran Small Entrepreneurship Program (up to 100 points reserved for Hudson-certified vendors; up to 120 points reserved for Veterans-certified vendors; if no Veterans-certified vendors propose, those 20 points are not awarded; see Section 1.9.G for details) | 120 |
| HUDSON/VETERAN SCORE | 120 |
| PHASE 2: COST PROPOSAL | |
| Pharmacy Network Discounts, Rebate Guarantees, Administrative Services, Clinical Management Fees, and Credits & Allowances | 350 |
| COST PROPOSAL SCORE | 350 |
| TOTAL SCORE | 1,000 |

Section 3.1 further provided that the Evaluation Team would "evaluate each criterion within the Technical Proposal and assign scores based upon information submitted in the proposal content for Approach and Methodology and Corporate Experience and Staff Qualifications." Approach and Methodology included "[d]emonstrated effectiveness of Proposer's approach and methodology to performing the various services outlined in Section 2, Scope of Services and Attachment III; Technical Questionnaire." Cost proposals for all proposers would be evaluated and an absolute score calculated. Points for cost proposals would be "assigned for cost using a calculation-based evaluation process based on the costs from the pricing submitted by each proposer on Attachment XIII: Cost Proposal Template and Attachment XVI: Credits & Allowances," and "[p]roposers [were obligated to] complete Attachment XII: Cost Proposal Questionnaire."

OGB received proposals from MedImpact, CVS, Express Scripts, Inc., OptumRx, Inc., and Clutch Health. The proposal submitted by Clutch Health did not conform to the cost proposal requirement and was deemed non-responsive.

The following process was used to evaluate and score the proposals. As a preliminary review, the RFP Coordinator examined the proposals for proper form and cost elements. The Evaluation Team first discussed the strengths and weaknesses of each proposal for the criterion under consideration. OGB's

4

actuarial consultant, Buck Global, LLC ("Buck"), prepared a presentation dated May 11, 2020, which outlined the pros and cons of the technical proposals. In response to question C10 in the "Cost Proposal Questionnaire," which asked whether the proposer utilized a "Rebate Aggregator," MedImpact answered "Yes." In outlining the "Pros" and "Cons" of each proposal, Buck's presentation listed MedImpact's use of a rebate aggregator under "Cons" and noted "[u]tilizing a rebate aggregator limits third party audit abilities."

The scoring was by consensus, and the Evaluation Team filled out technical evaluation scoring sheets, which were developed utilizing the criteria specified in the RFP. OptumRx, Inc.'s proposal did not meet the minimum 265 points (50%) of the total available points in the categories of Approach and Methodology and Corporate Experience and Qualifications and accordingly, did not proceed.

The Evaluation Team submitted oral presentation invitations, instructions, and agenda to the three proposers deemed reasonably susceptible of receiving the award, namely: CVS, Express Scripts, Inc., and MedImpact. Oral presentations were held, and once concluded, the Evaluation Team submitted written follow ups for oral presentations and requests for Best and Final Offers ("BAFO") to the three proposers.

The Evaluation Team assembled on June 5, 2020 to award points for proposers' oral presentations and follow up responses. Once again, strengths and weaknesses were identified, and the Evaluation Team adjusted preliminary scoring points using consensus scoring based on the strengths and weaknesses identified. Buck prepared a presentation dated June 5, 2020, which outlined the post-BAFO technical proposal results and cost proposal results.

The Evaluation Team chose to submit another Best and Final Offer ("BAFO II") request to the three remaining proposers. The Evaluation Team reconvened on June 12, 2020 to adjust scoring points based on the three proposers' BAFO II

responses. Buck prepared a presentation dated June 12, 2020, which outlined the post-BAFO II total costs and scores of each cost proposal.

After considering the submissions received, the Evaluation Team recommended awarding the contract to CVS. The evaluations and recommendations of the Evaluation Team were presented to the Chief Executive Officer; the Evaluation Team's recommendation was to award the contract to the highest scored proposer. On June 22, 2020, OGB submitted a selection memorandum[1] to the OSP, which included an outline of the foregoing process used to evaluate and score the proposals, among other information. Thereafter, OGB announced the award of the PBM services contract to CVS.

On July 23, 2020, MedImpact[2] filed a protest of the award of the PBM contract to CVS with the Chief Procurement Officer ("CPO"), pursuant to LSA-R.S. 39:1671. On July 23, 2020, the CPO acknowledged receipt of the protest and issued a Stay of Award. MedImpact filed a supplemental protest on September 4, 2020, arguing, in part, there was an absence of materials from the Evaluation Committee relative to how the final scores were derived, which rendered the evaluation process fatally flawed; there was a substantial error in the assignment of MedImpact's technical proposal administration score; and there were mathematical errors in the scoring of MedImpact's cost proposal. MedImpact also objected to OGB's alleged negotiation of an "emergency" contract with CVS for the same services included in the RFP. The CPO denied MedImpact's protest on January 8, 2021.

---

[1] Former La. Admin. Code Title 34, Part V, § 2545, which was repealed in May 2021, applied to all requests for proposals solicitations issued under any provision of Chapter 17, Title 39 of the Louisiana Revised Statutes, unless otherwise stated. See La. Admin. Code Title 34, Part V, § 2545(A). Former La. Admin. Code Title 34, Part V, § 2545(A)(2) provided that "[w]hen a final selection has been made, but prior to notice of award, the contract file containing that information outlined in Paragraphs 1-2 above, including the request for proposals, along with a selection memorandum justifying the final selection shall be sent to the [OSP] for final concurrence."

[2] Clutch Health likewise filed a protest, which was later voluntarily dismissed.

On January 15, 2021, MedImpact appealed the CPO's decision denying its protest to the Commissioner, pursuant to LSA-R.S. 39:1671(E) and LSA-R.S. 39:1683. On February 18, 2021, the Commissioner denied MedImpact's appeal and affirmed the decision of the CPO awarding and reinstating the PBM contract to CVS.

Thereafter, MedImpact filed a petition for preliminary and permanent injunction and mandamus against the State Defendants in the Nineteenth Judicial District Court on March 3, 2021, asking the district court to enjoin the State Defendants from executing, performing, or proceeding with the award and execution of the PBM contract with CVS and to order the Commissioner to cancel the award to CVS and issue a new RFP. CVS intervened on March 5, 2021. The State Defendants filed an exception of lack of original jurisdiction, challenging the district court's original jurisdiction to hear the requests for mandamus and injunctive relief, as well as exceptions raising the objections of no cause of action and no right of action, contending MedImpact had no right or cause of action to seek a writ of mandamus. The district court sustained the exception of no cause of action and ordered MedImpact to amend its petition.

On April 13, 2021, MedImpact filed its first amended and supplemental petition for judicial review, stating that its requests for injunctive relief and mandamus were moot and removed, seeking judicial review of the State Defendants' actions in connection with the scoring and proposed contract award to CVS, and asking the district court to reverse and cancel the award to CVS. MedImpact raised the following assignments of error for consideration by the district court: (1) the Commissioner erred in participating in both the attempted award of an emergency contract to CVS and the review of MedImpact's protest; (2) OGB erred in using an outside consultant to evaluate the proposals, as it did not have statutory or regulatory authority to do so; (3) OGB and the outside consultant

7

erred in failing to comply with the RFP in the manner in which the outside consultant evaluated the proposals; (4) OGB erred in its scoring of MedImpact's use of a rebate aggregator in the technical proposal section instead of the cost proposal section, as required by the RFP; and (5) OGB erred in deducting points from MedImpact for its past performance on its state contract, as past performance was not an advertised criterion in the RFP.

A copy of the administrative record was filed with the district court, and MedImpact filed a motion to compel, objecting to the current contents of the record as incomplete and seeking supplementation. The district court ordered that the administrative record be supplemented with documents including "the 'official contract file' as referenced in La. R.S. 39:1558 and/or the 'contract file' referenced in LAC 34:V.2545(A)(2)[3] to include ... [t]he original, advertised RFP ... [t]he original proposal submitted by MedImpact ... [t]he first and second Best and Final Offer submitted by MedImpact ... [t]he original PowerPoint presentations prepared for or used by the OGB for the RFP." Counsel for the DOA certified that although such documents normally would not be included in a contract file as referenced in the cited statutes, the requested documents were supplemented to the administrative record. Thereafter, in a supplemental Memorandum in Support of Petition for Judicial Review, MedImpact asserted OGB failed to maintain a "contract/procurement file."

After a hearing on June 24, 2021, the district court reversed and cancelled the proposed contract award of OGB's PBM services contract to CVS and ordered the RFP for PBM services be cancelled. In signing MedImpact's proposed Findings of Fact, Conclusions of Law, and Reasons for Judgment, on July 9, 2021, as its own written reasons for judgment, the district court ruled that the State

---

[3] See footnote 1, supra. After former La. Admin. Code Title 34, Part V, § 2545 was repealed in May 2021, La. Admin. Code Title 34, Part V, § 2545(A)(2) became La. Admin. Code Title 34, Part V, § 2605(A).

Defendants' actions were in violation of Louisiana law and the RFP and arbitrary and capricious. The district court found that the State Defendants violated the RFP, as Sections 1.28 and 3.1 of the RFP required the Evaluation Team to score the technical proposals, yet Buck, not the Evaluation Team, scored the technical proposals and the Evaluation Team merely adopted the scores. The district court further found that the State Defendants violated the RFP in that MedImpact's use of a rebate aggregator improperly was scored in the technical proposal section rather than the cost proposal section. Lastly, the district court found that the State Defendants failed to maintain a contract file and transmit same along to the OSP with the selection memorandum, in violation of LSA-R.S. 39:1558 and La. Admin. Code Title 34, Part V, § 2605(A). The district court signed a judgment in accordance with these findings on July 16, 2021, ordering that the award to CVS be reversed and cancelled and further ordering that the RFP be cancelled.[4]

The State Defendants and CVS then filed the instant appeal of the district court's July 16, 2021 judgment, assigning as error: (1) the district court's consideration of issues not presented to the CPO or the Commissioner or raised in MedImpact's petitions for review; (2) the district court's finding the RFP was violated because the Evaluation Team utilized the evaluation and input from its expert consultant, Buck, on technical components of the RFP; (3) the district court's finding the RFP was violated because OGB scored the administrative and audit limitations of MedImpact's rebate aggregator under the technical section of

---

[4] On July 9, 2021, the district court signed a judgment, denying MedImpact's Petition for Judicial Review; a copy of that judgment was mailed on July 14, 2021. However, on July 16, 2021, which was within the LSA-C.C.P. art. 1974 delay for applying for a new trial, the district court signed an Order, stating "IT IS ORDERED that the Judgment denying Plaintiff's Petition for Judicial Review signed on July 9th, 2021 be vacated and without legal effect because it was erroneously signed." See e.g. First Bank and Trust v. Fitness Ventures, L.L.C., 2017-0475 (La. App. 1st Cir. 12/6/17), 2017 WL 6031783, *3 (unpublished) (citing Lousteau v. K-Mart Corp., 2003-1182 (La. App. 5th Cir. 3/30/04), 871 So. 2d 618, 620, writ denied, 2004-1027 (La. 6/25/04), 876 So. 2d 835 ("The recordation of the trial court that it signed the first judgment in error, within the time frame permitted for granting a new trial, persuades us that the [second] judgment is not invalid as an impermissible amended judgment.")).

9

the RFP; and (4) the district court's finding the State Defendants failed to maintain and transmit a "contract file" and that the alleged deficiency was a basis to overturn the contract award to CVS.[5]

This court determined that the July 16, 2021 judgment lacked decretal language and issued an interim order on March 9, 2022, remanding the matter to the district court for the limited purpose of allowing the district court to sign an amended judgment. On March 26, 2022, the district court signed an amended judgment, granting MedImpact's petition for judicial review, rendering judgment in favor of MedImpact and against the State Defendants and CVS, and ordering that "the February 18, 2021, decision of the Commissioner of Administration affirming the January 8, 2021 protest decision of the Chief Procurement Officer and the contract award for RFP No. 3000014397 is **REVERSED**," "the proposed contract award to Intervenor, Caremark PCS, LLC for pharmacy benefit management services be reversed and cancelled pursuant to La. R.S. 39:1677," and "Request for Proposal No. 3000014397 for pharmacy benefit management services be cancelled."

We find the March 26, 2022 amended judgment is sufficiently precise, definite, and certain, and contains the requisite decretal language, such that the appeal is properly before us. See e.g. LSA-C.C.P. art. 1918(A); Metcalfe & Sons Investments, Inc. v. State ex rel. Department of Natural Resources, 2010-2120 (La. App. 1st Cir. 12/14/11), 2011 WL 6288044, *2 (unpublished), writ denied, 2012-0143 (La. 3/23/12), 85 So. 3d 94 (finding that judgment language stating "the

---

[5] MedImpact asserts that appellants' "Statement of the Case" and "Statement of Facts" fail to comply with Uniform Rules—Courts of Appeal, Rule 2-12.4. We find no merit to this contention. Appellants' brief provides a concise statement of the case, indicating the nature of the case, the action of the district court and the disposition, and a statement of facts relevant to the assignments of error and issues for review, with references to the specific page numbers of the record, in compliance with Rule 2-12.4(A)(4) and (7).

decision of the Commissioner of Administration be and is hereby REVERSED" was a final judgment).

## **STANDARD OF REVIEW**

Judicial review of the decision of an administrative agency is an exercise of a district court's appellate jurisdiction pursuant to LSA-Const. art. V, § 16(B), which provides "[a] district court shall have appellate jurisdiction as provided by law."[6] The district court applied the standard of review set forth in the Louisiana Administrative Procedure Act ("APA") in LSA-R.S. 49:964(G). Louisiana Revised Statutes 49:964(G) states:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. ...

As this court recognized in United Healthcare Insurance Co. v. State ex rel. Division of Administration, 2011-1398 (La. App. 1st Cir. 9/28/12), 103 So. 3d 1095, 1099, it is proper to apply LSA-R.S. 49:964(G) by analogy in these types of cases since there was no "adjudication" by a state agency after notice and a

---

[6] The Nineteenth Judicial District Court, subject to appeal or review by the First Circuit Court of Appeal or by the supreme court, as otherwise permitted in civil cases by law and the state constitution, shall have jurisdiction over any claims arising out of a request for proposal or award of a contract, any controversies involving the state, or any other matters in connection with a petition for review of a decision made pursuant to this Chapter, following the exhaustion of administrative remedies as provided by law or regulation. LSA-R.S. 39:1672.4(A); see also, LSA-R.S. 39:1691(A).

hearing. See also Catamaran PBM of Maryland, Inc. v. State, Office of Group Benefits, 2014-1672 (La. App. 1st Cir. 6/5/15), 174 So. 3d 683, 688. The general principle governing the standard of review to be used when reviewing the findings of an administrative agency is, if the evidence, as reasonably interpreted, supports the agency's determinations, then the agency's decisions are accorded great weight and will not be reversed or modified in the absence of a clear showing that the administrative action was arbitrary or capricious. United Healthcare, 103 So. 3d at 1099. Further, an administrator vested with authority to exercise discretion is free to exercise that discretion as he or she sees fit as long as the exercise of that discretion is rational and not arbitrary or capricious. Id. at 1099-1100. The agency's discretion must be exercised in a fair and legal manner and not arbitrarily. The test for determining whether an action was arbitrary or capricious is whether the action taken was without reason. Id. at 1100.

## DISCUSSION

In their first assignment of error, appellants assert that the district court erred in considering issues that were never raised to the CPO, the Commissioner, or in the petitions for judicial review filed with the district court, which were waived and therefore improperly reviewed by the district court. Specifically, appellants initially contend that MedImpact never raised the "contract file" issue in the proceedings below. In response, MedImpact contends that it could not have been aware of the failure to maintain and transmit a contract file until the administrative record was lodged, and that LSA-R.S. 49:964(F)[7] allows proof of procedural irregularities to be taken in the court of review.

---

[7] Louisiana Revised Statutes 49:964(F) states: "The review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs."

12

When reviewing a final administrative decision, the district court functions as an appellate court, confining its review to the administrative record. Ledet v. Louisiana Department of Public Safety and Corrections, 2017-1457 (La. App. 1st Cir. 9/24/18), 259 So. 3d 348, 351, writ denied, 2018-1751 (La. 1/28/19), 262 So. 3d 901, cert. denied, ---U.S.---, 139 S. Ct. 2757, 204 L. Ed. 2d 1136 (2019); see also Hotel de la Monnaie Owners Association, Inc. v. Louisiana Tax Commission, 95-1009 (La. App. 1st Cir. 12/15/95), 669 So. 2d 455, 458, writ denied, 96-0956 (La. 5/31/96), 673 So. 2d 1030 ("[u]nder the [APA], a reviewing court is confined to the record established before the agency").

The administrative record reflects that neither the CPO nor the Commissioner addressed whether a contract file was properly transmitted and maintained, and that MedImpact did not raise this argument before them. However, prior to filing its protest, MedImpact tendered public records requests to the DOA and received documentation in response. The record does not reflect that MedImpact instituted a mandamus proceeding asserting it was denied the right to inspect, copy, reproduce, or obtain a copy or reproduction of a record,[8] or that it objected to the completeness of the production to either the CPO or the Commissioner. Instead, MedImpact proceeded with its protest using the documents received in response to its public records request.

We agree with appellants that MedImpact cannot assert a deficiency in the State Defendants' documentation for the first time in the district court, acting in its appellate capacity. As a general rule, appellate courts may not address issues raised for the first time on appeal. Jackson v. Home Depot, Inc., 2004-1653 (La. App. 1st Cir. 6/10/15), 906 So. 2d 721, 725. Furthermore, we find MedImpact's allegations cannot be construed as "irregularities in procedure before the agency," necessitating a remand by this court to the district court for the presentation of new

_____

[8] See LSA-R.S. 44:35(A).

13

evidence pursuant to LSA-R.S. 49:964(F). Accordingly, we find merit to appellants' contention that the contract file issue was not properly before the district court and could not serve as a basis for the decision of the district court to set aside the Commissioner's decision affirming the CPO's award of the PBM contract to CVS.[9]

Appellants further assert in their first assignment of error that MedImpact made no inquiry or objection when the RFP disclosed the use of a subject matter expert and failed to timely protest the expert's involvement, under LSA-R.S. 39:1671(A). Moreover, they argue, MedImpact has alleged it is "not objecting to OGB's use of Buck, OGB's consultant, in the RFP evaluation process and acknowledges that the RFP allows OGB to 'consult subject matter expert(s) to serve in an advisory capacity.'"

MedImpact did argue to the district court that, while the RFP allowed the Evaluation Team to consult with a subject matter expert to serve in an advisory capacity, this did not authorize OGB to retain an outside third-party consultant to score the proposals, which MedImpact alleged Buck did. MedImpact likewise raised the scope of Buck's work on the RFP and OGB's purportedly unreasonable adoption of Buck's recommendations in its protest to the CPO and/or its appeal to the Commissioner, which rendered decisions as to the propriety of OGB's adoption of Buck's recommendations. Therefore, we find the issue of OGB's use (or misuse) of its expert was properly before the district court and reject this portion of appellants' first assignment of error.

In their inter-related second assignment of error, appellants argue that the district court erred in finding the RFP was violated by the Evaluation Team's use

---

[9] Rescission of the RFP and cancellation of the award to CVS is not a stated remedy for failure to transmit a contract file, under former La. Admin. Code Title 34, Part V, § 2545(A) or La. Admin. Code Title 34, Part V, § 2605(A), or failure to maintain a contract file, under LSA-R.S. 39:1558.

of the evaluation and input of its expert consultant on technical components of the RFP. Appellants point out that the RFP allowed OGB to retain a subject matter expert, and argue that the district court's limitation of Buck's role on the technical component constitutes an overly restrictive and improper RFP interpretation. They further assert that in any event, the record does not contain any document showing Buck actually scored or allocated points to the technical proposals, since the Evaluation Team allocated the technical scores as shown in the selection memorandum and as contemplated under the RFP. MedImpact contends that OGB was not permitted to retain a subject matter expert to score the proposals, yet the administrative record shows that Buck set the technical proposal scores and the Evaluation Team adopted Buck's unreviewed, unevaluated scoring matrix as its own, as evidenced by language in the Evaluation Team's scoresheets stating "Evaluation Committee adopting Technical Proposal strengths and weaknesses presentation from Buck ... ."

Clearly, OGB is authorized to appoint a consulting actuary.[10] Moreover, as noted above, Section 1.28 of the RFP permitted the Evaluation Team to "consult subject matter expert(s) to serve in an advisory capacity regarding any proposer or proposal," and disclosed that "input **may include, but not be limited to**, ... review of technical requirements ... ." (Emphasis added).

While OGB did retain and use Buck's services, OGB's selection memorandum, as discussed in detail above, sets forth the activities and actions of the Evaluation Team with regard to the evaluation and scoring of technical proposals including, but not limited to, discussing the strengths and weaknesses of each proposal for the criterion under consideration, completing scoring sheets, conducting oral presentations, submitting written follow ups after oral presentations and requests for BAFOs and BAFO IIs, and awarding and adjusting

---

[10] See LSA-R.S. 42:802(B)(4).

15

scoring points to proposers. Moreover, the administrative record includes the Evaluation Team's scoring sheets.

We find no evidence in the administrative record to indicate that OGB did not, in fact, evaluate and score the proposals. Buck's technical proposal presentations do not reflect any point allocations. Additionally, although language in various scoresheets specified "Evaluation Committee adopting Technical Proposal strengths and weakness presentation from Buck ...," we find this notation does not reflect Buck **solely** evaluated or scored the proposals. Instead, this notation indicates the Evaluation Team relied upon the presentation of its consulting subject matter expert. Further, the use of the information in Buck's presentation does not preclude the Evaluation Team's own evaluation, nor does it establish that the Evaluation Team failed to do so. Thus, we find merit to appellants' argument in this assignment of error and that the district court erred in reversing the Commissioner's decision on the basis of improper use or reliance on Buck's evaluation and input.

Turning to their third assignment of error, appellants argue that the district court erred and misinterpreted the RFP in finding that OGB could not score administrative deficiencies in MedImpact's rebate aggregator program under the **technical proposal** as questions about rebate aggregators were in the Cost Proposal Questionnaire and therefore required to be included in cost scoring. Appellants assert that the RFP was set up to score costs strictly based on a numerical calculation, non-numerical factors were to be scored under the technical section, and a reference to a contract component in one section of the RFP does not preclude its consideration in another section of the RFP. MedImpact counters that Louisiana law and the RFP require the use of a rebate aggregator to be scored strictly in the **cost proposal** section, as the question appears in the Cost Proposal Questionnaire.

16

Louisiana Revised Statutes 39:1595(B)(5)(a) provides that "[t]he request for proposals ... shall indicate ... the criteria to be used in evaluating the proposals." Accordingly, an "[a]ward shall be made to the responsible proposer whose proposal is determined ... by the using agency to be the most advantageous to the state, taking into consideration review of price and the evaluation factors set forth in the [RFP]." LSA-R.S. 39:1595(B)(8)(a); see also former La. Admin. Code Title 34, Part V, § 2545(A)(2) ("The final selection of a contractor shall be made in accordance with the selection criteria established in the RFP."). In this regard, Section 1.28 of the RFP required the Evaluation Team to determine the proposal "most advantageous to OGB, taking into consideration cost, technical capabilities, and the other evaluation factors set forth in the RFP."

It was within the Evaluation Committee's discretion to choose the responsible offerer whose proposal is most advantageous to the state, taking into consideration review of price and the evaluation factors set forth in the RFP. Fleetcor Technologies Operating Co., LLC v. State ex rel. Division of Administration, Office of State Purchasing, 2009-0976 (La. App. 1st Cir. 12/23/09), 30 So. 3d 102, 111.[11] Moreover, the question as to which proposal is the "most advantageous" depends on the reasonable perceptions of the **governing authority**. See Executone of Central Louisiana, Inc. v. Hospital Service District No. 1 of Tangipahoa Parish, 99-2819 (La. App. 1st Cir. 5/11/01), 798 So. 2d 987, 990, writ denied, 2001-1737 (La. 9/28/01), 798 So. 2d 116. Thus, a reviewing court is not empowered to substitute its judgment for the good-faith judgment of the

---

[11] Fleetcor references former LSA-R.S. 39:1593(C)(2)(d)(i), which stated, "[a]ward shall be made to the responsible offerer whose proposal is determined in writing by the agency to be the most advantageous to the state, taking into consideration review of price and the evaluation factors set forth in the request for proposals." In 2015, LSA-R.S. 39:1593(C)(2)(d)(i) was amended and renumbered as LSA-R.S. 39:1595(B)(8)(a), which presently states, "[a]ward shall be made to the responsible proposer whose proposal is determined in writing by the using agency to be the most advantageous to the state, taking into consideration review of price and the evaluation factors set forth in the request for proposals" and is substantially similar to the prior version.

administrative agency based on its reasonable perceptions. See Fleetcor, 30 So. 3d at 110.

Question C10 in the Cost Proposal Questionnaire specifically asked proposers "[d]o you utilize a Rebate Aggregator" and "[i]f so, please explain any limitations for audits." MedImpact responded affirmatively,[12] noting that it "contracts with a rebate services vendor that negotiates with multiple aggregators and works directly with pharmaceutical manufacturers to provide the most competitive rebates," "[r]ebates are auditable for every client," and it "permits an independent third party to audit records and contracts for compliance with the terms of the MedImpact agreement," which "includes disclosure of MedImpact's contractual information with the rebate services vendor for its rebate administration program." In its BAFO request, OGB asked MedImpact to "[r]econfirm that MedImpact is unable to provide a third-party auditor direct access to manufacturer rebate contracts … due to the use of a rebate aggregator." MedImpact offered the following BAFO response:

> The proposed rebate guarantee amounts assume OGB adopts MedImpact's multi-bid strategy in which multiple rebate aggregators bid against each other by key therapeutic class to deliver low net cost for our clients. Under that model, MedImpact and OGB do not have access to the upstream manufacturer contracts and those manufacturer contracts cannot be audited. However, OGB can audit MedImpact's contract with our rebate services vendor to confirm rebates received by MedImpact and paid to OGB.
>
> If OGB requires audit rights of manufacturer rebate contracts, that can be accommodated through MedImpact's 'single bid strategy' which only submits rebates through pharma contracts. This provides audit rights but reduces rebate yield and rebate guarantees.

Buck's May 11, 2020 technical proposal presentation listed MedImpact's rebate aggregator use under "Cons" and noted "[u]tilizing a rebate aggregator limits third party audit abilities." The State Defendants concede that MedImpact's

---

[12] Conversely, in response to question C10 in the Cost Proposal Questionnaire, CVS stated it "does not utilize a Rebate Aggregator."

technical proposal score was reduced, in part, due to "administrative problems with MedImpact's rebate aggregator." They further note that "[o]n more than one occasion, the Legislative Auditor and other auditors have questioned OGB's inability to obtain complete information regarding the aggregator's accounting,"[13] and that "[d]uring the prior contract OGB pointed out this problem to MedImpact as the result of more than one audit, but it was never adequately addressed."

Although a question regarding the use of a rebate aggregator was asked in the Cost Proposal Questionnaire, rebates, rebate aggregators, and auditability were listed criteria and considerations under the RFP's technical section. For example, Section 1.9(E) of the RFP, which is titled "Approach and Methodology," required the proposer to "[d]emonstrate ... how its Proposal will best meet the needs of OGB through providing ... rebate management ... ." Section 2.2 of the RFP, which is captioned "Tasks and Services," similarly notes a proposer is responsible for providing "[PBM] services including ... rebate management ..." and "[r]ender[ing] payment to OGB for all rebates ... ." As noted above, Section 3.1 of the RFP provided technical proposal scores were derived, in part, from "Approach and Methodology," which included "demonstrated effectiveness of Proposer's approach and methodology to performing the various services outlined in Section 2, Scope of Services ... ."

Additionally, question A4 in the Technical Questionnaire asked the proposers to "[l]ist all entities or persons to which you intend to subcontract any work required under this Contract or utilize in connection with providing services to OGB. Subcontractors should include ... any ... rebate aggregator ... ." MedImpact responded to question A4, admitting its use of subcontractor services

---

[13] Section 1.40 of the RFP stated "[t]he State Legislative Auditor, federal auditors, internal auditors of the [DOA] and its designated agents ... shall be entitled to audit all accounts, procedures, matters, and records of any Contractor or subcontractor/vendor under any negotiated Contract or subcontract ... ."

and identifying its rebate administration services subcontractor.[14] Question C14 in the Technical Questionnaire asked the proposers to "[c]onfirm that OGB ... will have full audit rights, including ... on-site rebate contract review ...," and Questions F22-24, K1, and P4 raised additional questions about rebates and whether such would be passed back to OGB.... .

Furthermore, although Section 3.1 of the RFP required that proposers complete Attachment XII: Cost Proposal Questionnaire, the RFP expressly states that points for cost proposals are "assigned for cost using a calculation-based evaluation process based on the costs from the pricing submitted by each Proposer on the Attachment XIII: Cost Proposal Template and Attachment XVI: Credits & Allowances." The RFP does not state cost proposal scores will be calculated from Cost Proposal Questionnaire responses.

We find nothing in the language of the RFP precluding Cost Proposal Questionnaire responses from being considered in the technical section of the RFP. Section 3.1 of the RFP noted that proposals would be evaluated based on "information provided in the Proposal," without specifying any limitation, and Section 1.9(D) of the RFP stated **"OGB/State may consider any relevant information about any Proposer known or discovered by OGB."** (Emphasis in original). Thus, we also find merit to this assignment of error.

OGB is afforded great deference in decisions made within its scope of experience, expertise, and reasonable perceptions. Catamaran, 174 So. 3d at 690. Considering the foregoing, we find OGB had discretion and a reasonable basis to utilize the evaluation and input from Buck on technical components of the RFP and to score the administrative and audit limitations of MedImpact's rebate aggregator

---

[14] In response to question A4 in the Technical Questionnaire, however, CVS answered "[w]e directly furnish the core PBM services through our PBM subsidiaries or affiliates and do not have a strategic alliance or subcontract arrangement for such core PBM services." CVS provided a list of vendors it used for "support or ancillary services," and none provided rebate services.

under the technical section of the RFP. Accordingly, OGB's decision as well as the actions of the State Defendants were not in violation of the RFP or Louisiana law and were not arbitrary and capricious, and the district court erred in ruling otherwise.

## CONCLUSION

For the above and foregoing reasons, the March 26, 2022 amended judgment, granting the Petition for Judicial Review of MedImpact Healthcare Systems, Inc., ordering that the proposed contract award to intervenor-appellant, CaremarkPCS Health, LLC, for pharmacy benefit manager services be reversed and cancelled, and ordering that Request for Proposals No. 3000014397 for pharmacy benefit manager services be cancelled, is hereby reversed. The decision of the Commissioner of Administration denying the appeal of MedImpact Healthcare Systems, Inc. and affirming the Chief Procurement Officer's decision awarding and reinstating the pharmacy benefit manager services contract to intervenor-appellant, CaremarkPCS Health, LLC, pursuant to Request for Proposals No. 3000014397, is hereby reinstated.

Costs of this appeal are assessed to plaintiff-appellee, MedImpact Healthcare Systems, Inc.

**REVERSED AND RENDERED.**