GUIDRY, J.
 

 12FleetCor Technologies Operating Company, LLC (FleetCor), a rejected proposer on a state contract for fuel and maintenance services, appeals a judgment of the district court affirming the decision of the State of Louisiana, Division of Administration, Office of State Purchasing (State Purchasing) to award a state contract to an opposing proposer.
 

 FACTS AND PROCEDURAL HISTORY
 

 On August 24, 2007, the Division of Administration, Louisiana Property Assistance Agency mailed out copies of a “Request for Proposal for Statewide Fleet Fuel and Repair/Maintenance Service” (RFP) to solicit competitive proposals to provide fleet fuel and repair and maintenance services for state-owned and/or leased vehicles. The deadline for submission of proposals and for the opening of proposals was November 1, 2007.
 
 [1]
 

 According to the RFP, all proposals were to be received by State Purchasing and evaluated by a committee “whose members have expertise in various areas.” The Evaluation Committee was ultimately comprised of the State Fleet Manager and the Assistant Director for the Louisiana Property Assistance Agency, the Purchasing Director for the Department of Natural Resources, an Account Tech and an Administrative Coordinator from the Department of Public Safety and Corrections, and the Business Services Manager from the Department of Social Services. Based on the committee’s evaluation of the proposals, the committee recommended the proposal submitted by FuelTrac as being most advantageous to the State, and a contract was awarded to FuelTrac in accordance with the recommendation.
 

 |3FleetCor filed a written protest of the award with the director of State Purchasing, as chief procurement officer, in accordance with La. R.S. 39:1671(A). The director of State Purchasing denied Fleet-Cor’s protest, and FleetCor timely appealed the director’s decision to the Commissioner of Administration in accordance with La. R.S. 39:1683. The Commissioner upheld the director's decision to deny the protest and FleetCor filed a petition for judicial review with the Nineteenth Judicial District Court in accordance with La. R.S. 39:1691(A). On judicial review, the district court upheld the decisions of the agency officials, and it is from that judgment that FleetCor appeals to this court.
 
 See
 
 La. R.S. 39:1691(E).
 
 [2]
 

 
 *105
 
 ASSIGNMENTS OF ERROR
 

 On appeal, FleetCor asserts the following errors were committed by State Purchasing in reviewing and ultimately rejecting its proposal:
 

 1. The State Purchasing Director erred when she arbitrarily disqualified FleetCor and failed to afford Fleet-Cor’s appeal the required review.
 

 2. [State Purchasing] erred in its selection process because the RFP did not comply with the law mandating that appropriate weight be given to price as compared to technical factors.
 

 3. [State Purchasing] erred in its evaluation of the technical category because the evaluation was unsupported by a preponderance of the evidence and was arbitrary and capricious.
 

 4. [State Purchasing] erred and failed to comply with the law when it awarded the contract for diesel without accepting competitive bids.
 

 | .STANDARD OF REVIEW
 

 The standard applicable to our review of a decision of an administrative agency is governed by Section 964 of the Louisiana Administrative Procedures Act contained in Title 49 of the Louisiana Revised Statutes.
 
 GC Services Limited Partnership v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College,
 
 93-1948, p. 1 (La.App. 1st Cir.12/22/94), 648 So.2d 1045, 1046,
 
 writ denied,
 
 95-0211 (La.4/7/95), 652 So.2d 1345. Paragraph G of that section provides:
 

 The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 

 (1) In violation of constitutional or statutory provisions;
 

 (2) In excess of the statutory authority of the agency;
 

 (3) Made upon unlawful procedure;
 

 (4) Affected by other error of law;
 

 (5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
 

 (6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues.
 

 DISCUSSION
 

 In its first assignment of error, FleetCor contends that the director of State Purchasing, Denise Lea, did not afford its protest proper review based on her alleged error in concluding that its proposal should have been rejected and not evaluated because it was non-responsive to the RFP. We find no merit in this argument for two reasons. First, while the director
 
 *106
 
 did state in her written response |Bto FleetCor’s protest that she found Fleet-Cor’s proposal non-responsive and that it should not have been evaluated at all, she went on to state that “[i]n my review of [how the Evaluation Committee scored the technical aspects of FleetCor’s proposal in comparison with the proposal from FuelT-rac], I do not find any arbitrariness on the part of the evaluators. Absent clearly arbitrary or unreasonable scoring, I will not substitute my opinion for that of the multi-agency committee used in this procurement.” Thus, while the director may not have reached the conclusion FleetCor would have desired, she nevertheless summarily addressed the specific contentions raised by FleetCor in its written protest.
 

 Second, we find that although the director may not have addressed the issues FleetCor raised in its protest as thoroughly as it may have desired, the review provided by the director as well as the subsequent procedures accorded to FleetCor for further review, sufficiently provided Fleet-Cor with all the process it was due under the law.
 
 See Alexander & Alexander, Inc. v. State,
 
 596 So.2d 822, 827-828 (La.App. 1st Cir.1991),
 
 writ denied,
 
 600 So.2d 641 (La.1992). Therefore, we reject Fleet-Cor’s first assignment of error as lacking merit.
 

 In its second assignment of error, FleetCor essentially argues that the evaluation of the proposals submitted was unlawful for failing to give appropriate weight to the price and technical factors as provided by statute, regulation, and the RFP. It is not alleged that the Evaluation Committee used any requirement or criteria that was not disclosed in the RFP; rather, the main contention is that the Evaluation Committee did not disclose the specific weight by which it would be evaluating the price and technical factors of the RFP, and more importantly, that it did not disclose that greater weight would be given to the individual technical factors than to the price factors listed in the RFP.
 

 The Evaluation Committee used full point values in assessing the technical factors presented in the proposals submitted, but used tenths of a point in assessing | fithe price factors. It is FleetCor’s contention that use of the aforementioned method of assessment was improper because it failed to give proposers sufficient notice of “the relative importance of price and other evaluation factors” in violation of La. R.S. 39:1593(C)(2)(b). FleetCor alleges that the equal allocation of 50 points to both the price and technical portions of the proposal was misleading because a proposer could reasonably believe, as it did, that equal weight would be used in evaluating the price and technical factors. FleetCor argues that by using different point values or weights to assess the price factors, as compared to the technical factors, results in the technical factors being given greater importance than price, which it claims was not advantageous to the State.
 
 See
 
 La. R.S. 39:1593(C)(2)(d)(i) and RFP § 1.25. We reject these assertions.
 

 Louisiana Revised Statutes 39:1593(C)(2)(b) states that the RFP “shall indicate the relative importance of price and other evaluation factors.” (Emphasis added.) Notably, the statute does not state that the RFP must indicate the relative importance of price to other evaluation factors. Instead, a proper construction of the statute is that it states that the RFP must indicate the relative importance of all the evaluation factors to be used in the RFP, which should include price. This was done in the RFP, which stated that price factors would be allocated a total of 50 points and the technical factors would be allocated a total of 50 points, for an overall score of 100 points to be allocated in the evaluation of the proposals.
 

 
 *107
 
 As the specific formula by which the pricing portion of the proposals would be evaluated was provided in the RFP, Fleet-Cor cannot validly claim surprise about the resulting scores for the price proposals, since clearly the formula and current market conditions should have revealed to FleetCor, a seasoned and experienced participant of the fuel industry, that the prices to be proposed were |7likely to be quite close.
 
 [3]
 
 FleetCor should have been fully aware of the possibility that mere tenths of a point could separate the proposers’ scores based on the prices quoted and it was definitely aware that equal weight would be given to scoring the pricing of the onsite and offsite fuel factors.
 
 [4]
 

 Furthermore, although for the overall price proposal, FleetCor’s proposal was scored higher than FuelTrac’s, for the individual price factors for onsite (alternately referred to as consignment fuel in the RFP) and offsite fuel, FuelTrac scored higher (which meant its price per gallon was lower) than FleetCor for onsite fuel. So the amount of savings that would be realized by the State based on FleetCor’s price proposal would mainly be realized for offsite fuel. State Purchasing indicated that it wanted to move to providing more onsite fueling and therefore were looking for the overall savings in that area.
 
 [5]
 

 See
 
 RFP § 2.3.1.
 

 In its third assignment of error, FleetCor complains about the Evaluation Committee’s scoring of the technical portions of the proposals. The RFP delineated a specific formula by which the price factors would be evaluated, but notably, the same or a similar formula was not provided for evaluation of the technical factors. Instead, for the technical factors, the RFP simply stated that 18“[t]he following criteria are of importance and relevance to the evaluation of this RFP and will be used by the Evaluation Committee in the evaluation of the technical proposal.” (Emphasis added.)
 

 FleetCor requested that the Evaluation Committee specify the weight or point value to be given to the technical factors listed in the RFP during the inquiry period, but was told “[t]he values are unknown at this time, but will be established prior to evaluation.” Nevertheless, under the
 
 *108
 
 purchasing rules and regulations
 
 [6]
 
 contained in the Louisiana Administrative Code, it is stated:
 

 The purpose of a specification is to serve as a basis for obtaining a supply, service, or major repair item adequate and suitable for the state’s needs in a cost effective manner, taking into account, to the extent practicable, the costs of ownership and operation as well as initial acquisition costs. It is the policy of the state that specifications permit maximum practicable competition consistent with this purpose. Specifications shall be drafted with the objective of clearly describing the state’s requirements.
 

 LAC 34:I.301(A)(2) (emphasis added). Considering the applicable statutory, administrative, and RFP provisions, we cannot say that the failure to give prior notice of the weight or point value for the technical factors was improper. All of the proposers were provided the exact same information and advised that the purpose of the RFP was “to obtain competitive proposals” as allowed by La. R.S. 39:1593(C).
 
 See
 
 RFP § 1.1.1. Thus, despite its lack of knowledge of the specific weight or point value to be given to the individual technical factors, FleetCor was nonetheless aware that its proposal must be competitive in respect to all of the requirements of the RFP. This knowledge was sufficient to put FleetCor on notice of the importance of the technical factors. Additionally, as we explained about a similarly worded statute in
 
 Executone of Central Louisiana, Inc. v. Hospital Service District No. 1 of Tangipahoa Parish,
 
 99-2819, p. 4 (La.App. 1st Cir. 5/11/01), 798 So.2d 987, 991,
 
 writ denied,
 
 01-1737 (La.9/28/01), 798 So.2d 116, La. R.S. 39:1593(C)(2)(b) “does not require the use of a formula, percentage chart, or specific form. Nor is it necessary for an outsider to be able to correctly choose the winner of the contract merely by reading the proposals.”
 

 Moreover, FleetCor was not precluded from making a subsequent inquiry regarding the weight or point value to be given the technical factors, as long as it was presented during the established inquiry period. So if it felt truly disadvantaged by this lack of knowledge, it could have asserted its rights pursuant to La. R.S. 39:1671 A to protest the failure to advise proposers of the weight or point value to be accorded the individual technical factors.
 
 [7]
 

 We further find no merit in Fleet-Cor’s assertions that FuelTrac’s proposal did not comply with the terms of the RFP.
 
 [8]
 
 As for its assertion that the Evalua
 
 *109
 
 tion Committee arbitrarily and erroneously evaluated its proposal in regard to the technical factors, we also must reject this argument. The Evaluation Committee grouped the technical factors into four major categories and allocated points for each category as follows: “Company Background and Experience” (5 points); “Service and Support Requirements” (16 points); “Approach and Methodology” (20 points); “Implementation/Orientation Plan” (9 points). FuelTrac received a perfect score for all the categories except for “Service and Support Requirements,” for which it lost one point because of the noted weakness of providing a gallon per 110month minimum for added consignment (onsite) fuel sites. FleetCor received a deduction of three points for the same criteria group because of the cost it attributed for added consignment (onsite) fuel sites, for charging for non-generic reports, and for providing very limited ad-hoc reporting.
 

 The Commissioner of Administration, Angele Davis, found that FuelTrac was given too many points in this category because its score “was enhanced by factors which were not listed” in the RFP. Nevertheless, FleetCor asserts that the Evaluation Committee’s deduction of points for charging for “non-generic reports” was arbitrary and capricious because the fee it proposed was “solely for a side product.” FleetCor fails to appreciate that the side product it refers to relates to one of the specific technical services sought in the RFP. Section 2.1, titled “Scope of Work/Services,” paragraph I, states that “Preventative Maintenance (PM) and Repair Service data shall be provided electronically to DOA LPAA and to appropriate state agency/account.” (Emphasis added.) Yet in its proposal, FleetCor offers a “Preventative Maintenance Tracking and Reporting System” as an optional “Innovative Concept” that “will be made available to customers for a nominal monthly charge of $29.95 per bill group per month,” but for which it “agrees to cap the fee at $84.95 per month for the agency/participant.” Thus, there appears to be a sound and non-arbitrary basis for the Evaluation Committee’s deduction of points for Fleet-Cor’s charging of fees for non-generic reports.
 

 There were no noted weaknesses indicated for FuelTrac for any of the remaining categories, but FleetCor had noted weaknesses indicated for the areas of “Approach and Methodology” and “Implementation/Orientation Plan.” For “Approach and Methodology,” three points were deducted because FleetCor’s “web-based reporting tool is not the enterprise level management tool desired per RFP.” Fleet-Cor complains that the RFP did not explain what features would constitute “an enterprise level management tool.” This argument is not persuasive.
 

 InSection 1.7.2 of the RFP expressly provides that “[a]n initial inquiry period is hereby firmly set for all interested proposers to perform a detailed review of the [RFP] documents and to submit any written questions relative thereto.” That section further provides that “[t]he state reasonably expects and requires
 
 responsible
 
 and
 
 interested
 
 proposers to conduct their in-depth proposal review and submit inquiries in a timely manner.” Hence, if Fleet-Cor was unsure of what was meant by the term “an enterprise level management tool,” the proper remedy would have been to ask for clarification during the inquiry period and not wait until later to complain that it was “arbitrary and contrary to law to weigh competing [proposals] on an issue not accurately identified by the RFP.”
 

 Moreover, in reviewing FleetCor’s and FuelTrac’s proposal relative to this re
 
 *110
 
 quirement, we observe a distinct difference in their proposals that could support the Evaluation Committee’s difference in scoring the two proposals. The RFP expressly states that “[o]nline solutions are desired, with account information available at several levels of hierarchy.” In reviewing the two proposals, FuelTrac’s online system could be characterized as “web based,” whereas the online system proposed by FleetCor could be better characterized as “web accessed.” The FuelTrac system provides for account maintenance, reporting, and billing to be performed online, with the option of saving and delivering reports generated by the system in PDF, Excel, CSV, and Tab-Delimited file formats. So all transaction information is accessible and viewable directly online, and information is only downloaded if desired or necessary.
 

 At first glance, FleetCor’s system appears to provide only pre-programmed transaction files that the State could access via the web that must then be downloaded or imported into the State agency’s computer system to view using software applications that are present on the accessing computer. The proposal outlines how the FleetCor system provides for transaction information to be [^downloaded via “numerous reports and data into Microsoft Excel format or Microsoft Access where [the transaction file] can easily be used for further analysis and tracking.” Even the “Executive Level Snapshot Reporting” offered by FleetCor only provides for preparing and sending of “executive level overview reporting via Email, in Microsoft Excel format.” Eventually, the proposal discusses the availability of the Report-Builder function of its online system, which appears to provide some (but it is not clear if all) of the functions provided in the FuelTrac system.
 

 FleetCor’s less than clear and concise presentation of its online system could have served as the basis for the company’s proposal not scoring as high or equal to that of FuelTrac’s. The fact that FuelT-rac’s presentation of its system may have been perceived by the evaluators as much simpler and more readily adaptable to the State’s purpose, as opposed to that of FleetCor, whose presentation may have given the opposite impression, could have formed a reasonable basis for the difference in scoring between the two proposals relative to their online systems. As such, we will not substitute our judgment for the good-faith judgment of the administrative agency based on its reasonable perceptions.
 
 See Haughton Elevator Division v. State, Through Division of Administration, 367
 
 So.2d 1161, 1165 (La.1979).
 

 As for the weakness noted for the “Implementation/Orientation Plan” category of having “[n)o clearly defined responsibilities indicated in the implementation plan submitted,” from reviewing the RFP and the FleetCor and FuelTrac proposals, the Evaluation Committee’s comment could be addressed to FleetCor’s failure to clearly delineate the responsibilities relative to Fuel Control Terminals as requested in Section 2.1.2 of the RFP. That section provides that “[a]ll proposers should offer a Fuel Control Terminal for each State agency owned onsite fueling station upon request by any State agency under the umbrella of this | ^contract.” The section further provides that “[e]aeh proposal should include a concise list that clarifies what required conditions, equipment or services (i.e. telephone, electrical) must be present at each site a Fuel Control Terminal is to be installed prior to installation.”
 

 FuelTrac’s proposal clearly outlines these requirements, whereas FleetCor’s proposal does not. Despite being the existing fuel supply contractor, FleetCor stated that it “must gather the exact equipment configuration for each site needing fuel control terminal replace
 
 *111
 
 ment,” that it would “confirm the number of hoses (meters) being automated at each site,” and that it still needed to determine what equipment needed to be ordered and the associated costs. Hence, we find a non-arbitrary basis for the higher scoring of FuelTrac’s proposal for this category.
 

 Ultimately, we conclude that the Evaluation Committee’s assessment of the proposals was not arbitrary or capricious and thus its decision should stand. It is within the Evaluation Committee’s discretion to choose the responsible offerer whose proposal is “most advantageous to the state, taking into consideration review of price and the evaluation factors set forth” in the RFP. La. R.S. 39:1593(C)(2)(d)(i). It was a part of the Evaluation Committee’s discretion to decide which of the offered features best met the factors listed in the RFP, and we observe, as we did in
 
 Executone of Central Louisiana, Inc.,
 
 99-2819 at 5, 798 So.2d at 991, the fact that any “offered feature, cluster of features, or specific attributes might outweigh any differences in a quoted price” could not be known until proposals were submitted and reviewed. We therefore reject this assignment of error.
 

 Finally, FleetCor contends that State Purchasing unlawfully included the supply of diesel fuel in the contract issued pursuant to the subject RFP, alleging that no competitive bids were accepted to supply diesel fuel and that the Evaluation Committee did not consider or use the prices quoted for diesel fuel in evaluating 114the respective proposals.
 
 [9]
 
 State Purchasing explained that the decision was made not to include consideration of the diesel fuel quotes in the actual evaluation process because the supply of diesel fuel would be considered a “small purchase” and that it could not determine or project the quantities of diesel fuel that would be needed to justify making it a determinative factor of the bid. As the RFP clearly stated the outcomes desired from the procurement, the evaluation factors, their relative importance, and the criteria to be used in evaluating the proposals, we do not find State Purchasing’s handling of the diesel price quotes as precluding the execution of the contract that included the supply of diesel fuel under the circumstances provided.
 
 See
 
 La. R.S. 39:1593(C)(2)(b).
 

 CONCLUSION
 

 Accordingly, having thoroughly reviewed the administrative record in the matter before us and considering the arguments raised, we reject FleetCor’s appeal and affirm the judgment of the district court on judicial review of this administrative matter. All costs of this appeal are cast to the appellant, FleetCor Technologies Operating Company, LLC.
 

 AFFIRMED.
 

 [1]
 

 . The original deadline for submission of the proposals was October 2, 2007, but because of addenda issued for the RFP, the deadline was extended to November 1, 2007.
 

 [2]
 

 . In
 
 Willows v. State, Department of Health & Hospitals,
 
 08-2357, p. 9 (La.5/5/09), 15 So.3d 56, 62, the Louisiana Supreme Court held that the legislature did not intend that the Procurement Code provide a right of appeal to this court relative to any claims or controversies arising out of any contract or agreement executed prior to August I, 2008. Because of FleetCor’s protest. State Purchasing stayed the "intent to award" issued to FuelT-rac dated April 18, 2008. Following the Commissioner of Administration’s ruling on FleetCor's protest on August 12, 2008, the stay was lifted and FuelTrac was authorized to proceed with contract negotiations by the director of State Purchasing pursuant to a letter dated August 18, 2008. FleetCor filed a
 
 *105
 
 petition for judicial review and for a stay of the award and implementation of contract on August 25, 2008, with the Nineteenth Judicial District Court. Since the contract in this matter was not executed prior to August 1, 2008, jurisdiction lies for us to consider Fleet-Cor’s appeal.
 

 [3]
 

 . The RFP advised proposers that they could submit price proposals as either a "mark-up,” “rebate,” or both price structures. The proposers chose to submit their proposals with both mark up and rebate pricing. For markup pricing, proposers were advised in the RFP that the pricing "should reference a recognized 'benchmark' information table such as the Oil Price Information Service (OPIS) Gross Average Rack Price” and that "[a]ny benchmark table used must reflect the fuel index pricing for the Baton Rouge metropolitan area.” For rebate pricing, proposers were instructed to “indicate pricing as retail less tax.”
 

 [4]
 

 . Additionally, in a written inquiry made by FleetCor prior to submission of its proposal, it suggested that greater, instead of equal, weight should be given to the price factor for offsite fuel relative to onsite fuel. The Evaluation Committee rejected this suggestion and maintained that it would use the formula as outlined in the RFP.
 

 [5]
 

 .Throughout its brief, FleetCor presents the additional speculative argument that FuelTrac could have quoted a grossly uncompetitive price in its proposal and still have been awarded the contract. There is no merit in this argument for two reasons. First, it is mere fallacy, since that did not occur. Second, purchasing regulations and the RFP would prohibit the awarding of a contract under such circumstances.
 
 See
 
 La. R.S. 39:1593(C)(2)(d)(ii); LAC 34:I.1303 and 1307(A); RFP §§ 1.15 and 1.25 (wherein authority is given to reject any and all proposals that are deemed not to be in the best interest of the State, including when all otherwise acceptable bids received are at unreasonable prices).
 

 [6]
 

 . Section 1.45 of the RFP states that "[a]ll proposals and contracts submitted are subject to provisions of the laws of the State of Louisiana including but not limited to [La. R.S.] 39:1551-1736; purchasing rules and regulations; executive orders; standard terms and conditions; special terms and conditions; and specifications listed in this RFP.”
 

 [7]
 

 . As pertaining to the solicitation in this matter, La. R.S. 39:1671(A) provides that "[p]ro-tests with respect to a solicitation shall be submitted in writing at least two days prior to the opening of bids.”
 

 [8]
 

 . For example, FleetCor argues that FuelT-rac’s proposal should have been deemed "nonresponsive,” because it quoted a monthly monitoring fee of $24.95 for the installation of wireless fuel level monitors to onsite fuel dispensers owned by the State. This service was clearly optional and not a definite service that had to be provided. Section 2.1.2 of the RFP states that ”[i]t is not expected that the contractor will be responsible for installation, maintenance and/or repair of existing fuel dispensers, nor is the contractor expected to install electronic pulsars.” Similarly, FuelT-rac's proposal that it be paid in 25 days of the State's receipt of an invoice was not clearly violative of the Section 1.34 of the RFP that provides that "[pjayments will be made by the Agency within approximately thirty (30) days
 
 *109
 
 after receipt of a properly executed invoice.” (Emphasis added.)
 

 [9]
 

 . Section 3.1 of the RFP states "[a]ll Financial Proposal evaluations shall be based on the Proposers' cost structure applied to the cost of regular unleaded gasoline.”