# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2023 CA 1259

### VERIDA, INC. f/k/a SOUTHEASTRANS, INC.

### VERSUS

### STATE OF LOUISIANA, DIVISION OF ADMINISTRATION, JAY DARDENNE, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF DIVISION OF ADMINISTRATION, STATE OF LOUISIANA, DEPARTMENT OF HEALTH, STATE OF LOUISIANA, OFFICE OF STATE PROCUREMENT

*Judgment Rendered:*

MAY 3 1 2024

\*\*\*\*\*\*\*\*

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. C722412

The Honorable Tarvald A. Smith, Judge Presiding

\*\*\*\*\*\*\*\*

| | |
|---|---|
| J.E. Cullens, Jr.<br>Andree M. Cullens<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellee<br>Verida, Inc, f/k/a Southeastrans, Inc. |
| and | |
| J. Matthew Maguire, Jr.<br>Melissa D. Andrews<br>Atlanta, Georgia | |
| Bradley C. Guin<br>Larry M. Roedel<br>Daniel T. Price<br>Baton Rouge, Louisiana | Counsel for Intervenor/Appellant<br>Medi Trans, LLC |

Douglas Cade                          Counsel for Defendant/Appellee
Baton Rouge, Louisiana                State of Louisiana, Department of Health

********

2

BEFORE:  GUIDRY, C.J., CHUTZ, AND LANIER, JJ.

**LANIER, J.**

Intervenor/appellant, Medi Trans, LLC ("MediTrans"), appeals the May 26, 2023 judgment of the district court, acting in an appellate capacity in response to a petition for judicial review filed on behalf of a rejected proposer, plaintiff-appellee, Verida, Inc. f/k/a Southeastrans, Inc. ("Southeastrans"). The district court's judgment reversed the decision of Jay Dardenne, Commissioner of Administration for the State of Louisiana ("the Commissioner"), which upheld the validity of a contract awarded to MediTrans by the State of Louisiana, Department of Health ("LDH"). For the reasons that follow, we reverse.

## FACTS AND PROCEDURAL HISTORY

On November 15, 2021, LDH issued Request for Proposals No. 3000018038 ("the RFP") "to obtain competitive proposals from qualified Proposers who are interested in serving as the single Transportation Broker for Non-Emergency Medical Transportation (NEMT) and Non-Emergency Ambulance Transportation (NEAT) services statewide to Beneficiaries participating in the Louisiana Medicaid Program." Section 3.2.1 of the RFP provides for the evaluation of proposals by an evaluation team ("Evaluation Team"). Section 3.2.2 permits the Evaluation Team to "consult subject matter expert(s) to serve in an advisory capacity regarding any Proposer or proposal," and provides that "[s]uch input may include, but not be limited to, analysis of Proposer financial statements, review of technical requirements, or preparation of cost score data."

Concerning the evaluation and review of proposals, Section 3.3.2 of the RFP states that the Evaluation Team would "evaluate and score the proposals" according to the following criteria:

3

| EVALUATION CRITERIA | ASSIGNED POINTS |
|---|---|
| Business Proposal | Pass/Fail |
| Technical Proposal | |
|    Proposer Organization and Experience | 150 |
|    Staff Qualifications and Training | 80 |
|    Approach and Methodology | 200 |
|    Case Scenarios | 200 |
|      Total Technical Proposal | 630 |
| Veteran or Hudson Initiative<br>i.   Up to 10% (100 points maximum) available for Hudson-certified vendors;<br>ii.   Up to 12% (120 points maximum) available for Veteran-certified vendors;<br>iii.   If no Veteran-certified vendors propose, the additional 20 Veterans points are not awarded.<br>See Section 3.5 for more information. | 120 |
| Cost Proposal | 250 |
| Total Possible Points | 1000 |

Further, Section 3.3.1 provides that LDH would determine the most advantageous proposal to the State and that proposers must "demonstrate an understanding of all requirements as specified in the RFP" and "that they have the capacity, capability, and relevant experience and expertise to perform the requirements specified in this RFP."

LDH received proposals from MediTrans; Southeastrans; Veyo, LLC; We Lift, LLC; and One Bunch Hook Up, LLC. The Evaluation Team began its scoring process, assessing the Technical Proposals submitted by each of the bidders. The proposals submitted by We Lift, LLC and One Bunch Hook Up, LLC were rejected pursuant to Section 3.3.2.4 of the RFP for failing to achieve the minimum Technical Proposal score.[1] Southeastrans earned the highest Technical Proposal score (560), followed by MediTrans (458), and Veyo (455).

Next, the Evaluation Team considered the remaining proposals, calculating each proposal's Cost Proposal score using a mathematical formula that was set out in Section 3.4 of the RFP. MediTrans earned the highest Cost Proposal score (250), followed by Southeastrans (194.04) and Veyo (172.67). After the Technical Proposal and Cost Proposal scores were assigned by the Evaluation Team,

---

[1] Section 3.3.2.4 requires a minimum Technical Proposal score of 315 points to be considered responsive to the RFP. Proposals not meeting this requirement "**shall be rejected and not proceed further to Cost or Louisiana Veteran and/or Hudson Initiative evaluation.**" (Emphasis in original.)

Southeastrans' proposal was in the lead with 754.04 points, followed by MediTrans with 708 points. Veyo's combined score was 627.67.

However, the evaluation did not end here. Each proposal was then evaluated for its Hudson and Veteran Initiative ("HVI") plan. As explained in Section 1.23.1 of the RFP, the "State of Louisiana Veteran and Hudson Initiatives are designed to provide additional opportunities for Louisiana-based veteran-owned and small entrepreneurships ... to participate in contracting and procurement with the State." Pursuant to those initiatives, points could be awarded to proposals that demonstrated an intention to utilize HVI certified businesses in performance of the advertised proposed contracts. MediTrans was the only proposer that included a plan to utilize HVI certified businesses in the performance of the contract. Thus, MediTrans was the only proposer that garnered points pursuant to the initiatives, earning 104.8 points.[2] Once all of the scores were combined, MediTrans' proposal earned the highest total score, 812.80, nearly 60 points more than the 754.04 points earned by Southeastrans' proposal. Veyo was a distant third with 627.67 points.

Pursuant to Section 1.9 of the RFP, Ali Bagbey, the RFP Coordinator, sent a letter to MediTrans on January 24, 2022, requesting clarification of its proposal. Specifically, the letter inquired about MediTrans' stated experience as a transportation broker and requested details about MediTrans' intention to utilize small and/or veteran-owned subcontractors pursuant to the HVI plan. MediTrans submitted its response to the request on January 26, 2022, addressing all of the questions raised.

---

[2] We note a discrepancy in the record as to the number of HVI points awarded to MediTrans. In both the Commissioner's administrative appeal decision and the Chief Procurement Officer's protest decision, MediTrans' total score is reflected as 821.79, which includes an award of 113.79 in HVI points. However, the scoring sheets that were signed by the Evaluation Team show a total score of 812.80, which includes an award of only 104.8 in HVI points. Nonetheless, regardless of which score is used, MediTrans' proposal remains the proposal that earned the highest overall score.

On January 27, 2022, Ms. Bagbey notified LDH Medicaid Executive Director, Patrick Gillies, of the Evaluation Team's recommendation to award the contract. On the same date, a Selection Memorandum bearing Director Gillies' signature was sent to Pamela Bartfay Rice, Office of State Procurement, requesting her concurrence ("First Selection Memo"). The First Selection Memo indicated that although MediTrans received the highest score, the Evaluation Team had determined that MediTrans was not responsible pursuant to Section 1.17 of the RFP based on the financials submitted. Therefore, Southeastrans, having received the second highest score and deemed a responsible proposer, was recommended for the contract.

However, according to the record, LDH's Bureau of Legal Services and the Executive Management Team, which includes the LDH Secretary, ultimately determined that MediTrans was responsible and should be awarded the contract. Therefore, on February 23, 2022, Director Gillies sent a second Selection Memorandum ("Second Selection Memo") to Ms. Rice requesting her concurrence, noting that the decision was based on a determination that MediTrans' proposal was the most responsive to the needs of the State, taking into consideration price and other evaluation factors set forth in the RFP, and that it had received the highest score from the Evaluation Team. The Evaluation Team signed its scoring sheet on March 22, 2022, and, on April 12, 2022, LDH issued its notice of intent to award the contract to MediTrans.

Pursuant to La. R.S. 39:1671, Southeastrans, Veyo, and One Bunch Hook Up, LLC filed protests with the Chief Procurement Officer ("CPO") concerning the award of the contract to MediTrans. The primary issues raised in the protests were: (1) MediTrans was a non-responsive bidder because it did not have at least three years of the last five years as a Medicaid transportation broker; (2) MediTrans was a non-responsive bidder because it did not satisfy the RFP's call

center requirements; (3) MediTrans was not eligible for the award because it was not financially responsible; and (4) the Evaluation Team conducted improper evaluation and scoring. After considering the RFP and MediTrans' proposal, including the information provided in its response to the request for clarification, the CPO denied the protests, upholding LDH's decision to award the contract to MediTrans.

Southeastrans and Veyo appealed the CPO's decision denying the protests to the Commissioner. See La. R.S. 39:1671(E) and La. R.S. 39:1683. On August 3, 2022, the Commissioner issued a decision, denying the appeals and affirming LDH's award of the contract to MediTrans.

Thereafter, Southeastrans filed a petition for judicial review of the Commissioner's decision in the Nineteenth Judicial District Court, arguing that "LDH acted arbitrarily and capriciously in violation of the Procurement Code" and erroneously awarded the contract to MediTrans rather than Southeastrans. Southeastrans alleged that the award of the contract to MediTrans was in violation of law and should be cancelled pursuant to La. R.S. 39:1677. MediTrans filed a petition of intervention, seeking "to protect its rights stemming from LDH's decision to award the contract to it."

Following a hearing on the matter, the district court signed a judgment on May 26, 2023, reversing the Commissioner's decision. The district court found that based on the evidence presented, MediTrans "was not a Transportation Broker timely enough to meet the mandatory requirements of the RFP" and further determined that the record was void of any evidence to support LDH's change in recommendation from Southeastrans to MediTrans, after LDH had found that MediTrans was not financially responsible. This appeal by MediTrans followed.

## STANDARD OF REVIEW

Judicial review of the decision of an administrative agency is an exercise of a district court's appellate jurisdiction pursuant to La. Const. art. V, § 16(B), which provides "[a] district court shall have appellate jurisdiction as provided by law."[3] On appeal to the district court, the Louisiana Administrative Procedure Act governs the judicial review of final decisions in agency adjudications. **ASG Technologies Group, Inc. v. Office of Technology Services**, 2021-1046 (La. App. 1 Cir. 6/30/22), 344 So.3d 136, 148-149. Louisiana Revised Statutes 49:978.1(G)[4] sets forth the exclusive grounds upon which an administrative agency's decision may be reversed or modified on appeal and provides, in pertinent part:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court.

An aggrieved party may obtain a review of any final judgment of the district court by appeal to the appropriate circuit court of appeal. La. R.S. 49:979.[5] Appellate

---

[3] See La. R.S. 39:1672.4(A) and La. R.S. 39:1691(A).

[4] Louisiana Revised Statutes 49:978.1 was re-designated from La. R.S. 49:964 by 2022 La. Acts, No. 663, § 1.

[5] Louisiana Revised Statutes 49:979 was re-designated from La. R.S. 49:965 by 2022 La. Acts, No. 663, § 1.

review of the district court's judgment is *de novo,* without regard for the factual findings or the legal conclusions of the district court. **ASG Technologies Group, Inc.,** 344 So.3d at 150. An appellate court sitting in review of an administrative agency reviews the findings and decision of the administrative agency, not the decision of the district court. *Id.*

## LAW AND ANALYSIS

### *Judicial Review by District Court Confined to Record*

MediTrans challenges the district court's use of extraneous and irrelevant sources of information in its review of the Commissioner's decision. Specifically, MediTrans points to the testimony of its Chief Executive Officer, Paul Broussard, during an October 20, 2020 hearing before the Louisiana House of Representatives Committee on Health and Welfare. Southeastrans attached a copy of the video clip from the hearing to its petition for judicial review below. According to Southeastrans, Mr. Broussard stated as follows during the hearing, "My name is Paul Broussard. I represent MediTrans which is the only Louisiana owned CTN facility here. We're not considered a broker. We're a coordinated transportation network, I guess."

It is apparent from the record that the district court relied heavily on this testimony in its review. In its reasons for judgment, the district court stated, in pertinent part:

> This testimony given before a legislative body investigating the delivery of NEMT services cannot be discounted by the Court. To date, and at the time of these proceedings, MediTrans may indeed be a Transportation Broker, but from the evidence presented to this Court, MediTrans was not a Transportation Broker timely enough to meet the mandatory requirements of the RFP for the Single Transportation Broker contract issued by the State of Louisiana.

However, based on the language of the Commissioner's decision below, there is no dispute that this testimony was not in the record considered by the Commissioner in its review of the CPO's decision: "Furthermore, [Southeastrans] urges the

9

Commissioner to consider documents and circumstances that are unrelated to the RFP at issue here or the proposals submitted by the parties, I decline to do so. I will not address alleged events that occurred outside of the RFP, protest, and appeal processes."

We agree with MediTrans that the district court erred in going beyond the administrative record in its review. Louisiana law is well settled that judicial review of a decision of an administrative governmental agency is confined to the record. La. R.S. 49:978.1(F); **Medimpact Healthcare Systems, Inc. v. Division of Administration**, 2021-1367 (La. App. 1 Cir. 6/3/22), 343 So.3d 705, 713 ("[w]hen reviewing a final administrative decision, the district court functions as an appellate court, confining its review to the administrative record"). The district court relied on testimony that was not in any of the proposals and, therefore, was not considered by LDH or the Evaluation Team in its decision to award the contract to MediTrans. Accordingly, we find merit to MediTrans' argument that Mr. Broussard's testimony was not properly before the district court and could not serve as a basis for the district court's decision to reverse the Commissioner's decision affirming LDH's award of the contract to MediTrans.

*MediTrans' Status as a Responsible Proposer*

MediTrans argues that the district court erred in concluding that LDH had changed its position on MediTrans' responsibility. MediTrans asserts that LDH never previously disqualified MediTrans as nonresponsible and that the draft memorandum relied on by the district court "does not accurately reflect LDH's final decision or the outcome of the evaluation process." We agree with MediTrans and find there is ample evidence in the record to support LDH's conclusion that MediTrans is a responsible proposer.

In its written reasons for judgment, the district court noted that LDH's Second Selection Memorandum recommending MediTrans for the contract made

10

no mention of its earlier recommendation that found MediTrans to be nonresponsible. Invalidating LDH's decision on the basis of a lack of evidence to support this change, the district court stated, "[t]o make a change of a recommendation without any evidence in the record as to why, is a key issue that gives rise to the standard of relying on statements in pleadings to void any concern or question."

In a competitive RFP process, the Louisiana Procurement Code requires the contract be awarded to "the responsible proposer whose proposal is determined in writing by the using agency to be the most advantageous to the state, taking into consideration review of price and the evaluation factors set forth in the [RFP]." La. R.S. 39:1595(B)(8)(a). No contract shall be awarded "unless the head of the using agency has first determined that such person or firm is responsible." LAC 34:V.2536(B). In order to qualify as responsible, a proposer must present evidence of compliance with the standards set forth in LAC 34:V.1505(A). LAC 34:V.2536(A). Moreover, LAC 34:V.1511 sets forth mandatory notice and hearing requirements for when a proposer is determined to be nonresponsible as follows: (1) the agency head shall prepare "a written determination … setting forth the basis of the finding;" (2) the written determination shall be promptly sent to the proposer; and (3) the proposer shall be given a reasonable opportunity to be heard at a hearing to refute the reasons for the disqualification. LAC 34:V.1511(A) and (B).

Section 1.17 of the RFP in this case provides that determination of the proposer's responsibility shall be made according to the standards set forth in LAC 34:V.1505 and that the State must find the selected proposer has adequate financial resources or the ability to obtain such resources; has the necessary experience, organization, technical qualifications, skills and facilities, or the ability to obtain them; is able to comply with the time of delivery or performance schedule; has a

11

satisfactory record of integrity, judgment, and performance; and is otherwise qualified under applicable laws and regulations.

A review of the record reveals that MediTrans submitted income statements and balance sheets for 2018-2021 reflecting a positive total equity and assets for all years. Moreover, MediTrans offered a letter from the Vice President of JD Bank in which it was noted that MediTrans is "in good financial standing with the bank, is considered an excellent client with adequate financial resources to operate its business, and demonstrates high integrity and ethical behavior." The letter stated further that MediTrans had "demonstrated financial stability, strength, and sustained growth" since being a client of JD Bank, a relationship that included depository, treasury, and commercial loans.

As noted by LDH's Bureau of Legal Services, the initial finding by the Evaluation Team that MediTrans was not responsible was based solely on MediTrans having not submitted audited financial statements. However, once the Bureau of Legal Services and the Executive Management Team considered the issue, the Evaluation Team's "initial, tentative decision" was reversed based on a finding that MediTrans submitted "sufficient information to be deemed a responsible proposer." According to LDH, this "ultimate conclusion [was based] on the fact that the RFP did not mandate, but permissively requested audited financial statements by a proposer, or 'other appropriated documentation' as stated in Section 2.6.3.2 of the RFP."[6]

Based on its review of MediTrans' proposal and considering the factors set forth in the RFP, LDH concluded that the record contained ample proof that MediTrans was a responsible proposer that met the RFP requirements. The

---

[6] Section 2.6.3.2 of the RFP provides that the documents submitted should include "audited financial statements for each of the last three (3) years" … "or other appropriate documentation, which would demonstrate to LDH the Proposer's financial resources sufficient to conduct the project as required by Section 1.17."

Commissioner found that LDH's determination that MediTrans was a responsible proposer was not arbitrary or capricious and refused to substitute his judgment for that of the LDH or the Evaluation Team. We have reviewed the record and agree with the Commissioner. While there is no dispute that LDH initially recommended Southeastrans for the contract, it is also clear from the record that the mandatory notice and hearing requirements set forth in LAC 34:V.1511(A) and (B) were not complied with such that MediTrans was never disqualified by LDH as nonresponsible. Rather, after fully considering the documents submitted by MediTrans, LDH made a finding that MediTrans was "qualif[ied] as responsible" pursuant to LAC 34:V.2536(A) and (B).

It was within the Evaluation Team's discretion to choose the responsible proposer whose proposal is most advantageous to the state, taking into consideration review of price and the evaluation factors set forth in the RFP. **Fleetcor Technologies Operating Company, LLC v. State ex rel. Division of Administration, Office of State Purchasing**, 2009-0976 (La. App. 1 Cir. 12/23/09), 30 So.3d 102, 111. Moreover, the question as to which proposal is the most advantageous depends on the reasonable perceptions of the governing authority. See **Executone of Central Louisiana, Inc. v. Hospital Service District No. 1 of Tangipahoa Parish**, 99-2819 (La. App. 1 Cir. 5/11/01), 798 So.2d 987, 990, writ denied, 2001-1737 (La. 9/28/01), 798 So.2d 116. LDH is afforded great deference in decisions made within its scope of experience, expertise, and reasonable perceptions. See **Catamaran PBM of Maryland, Inc. v. State, Office of Group Benefits**, 2014-1672 (La. App. 1 Cir. 6/5/15), 174 So.3d 683, 690. A reviewing court is not empowered to substitute its judgment for the good-faith judgment of the administrative agency based on its reasonable perceptions. See **Fleetcor**, 30 So.3d at 110. Accordingly, the decision of LDH and the Evaluation Team, as well as the decisions of the CPO and the Commissioner, were not in

13

violation of the RFP and were not arbitrary and capricious. The district court erred in ruling otherwise.

### *MediTrans' Qualification as a Transportation Broker*

MediTrans contends the district court created non-existent requirements that are not found in the RFP to disqualify MediTrans, *i.e.*, that MediTrans did not have a minimum of three years of experience providing transportation broker services to a Managed Care Organization ("MCO") or Fee-For-Service ("FFS") program. MediTrans maintains that by misinterpreting the RFP and holding MediTrans' proposal to a higher, non-existent standard, the district court divested LDH of its great discretion and substituted its own judgment for LDH's judgment. Southeastrans argues the RFP does not support this position but rather clearly requires a proposer to have three years of Medicaid transportation broker experience. Southeastrans avers that the district court's decision should be upheld as the award to MediTrans was "in violation of statutory provisions, in excess of the authority of the Commissioner and the LDH, arbitrary or capricious, and not supported and sustainable by a preponderance of the evidence."

Section 2.6.1 of the RFP requires that in order to be considered for the award, the proposer must demonstrate that it has met certain mandatory qualifications, including the requirement set forth in Section 2.6.1.3 that the proposer have "within the last five (5) years, a minimum of three (3) years of experience providing Transportation Broker services." "Transportation Broker" is defined in Section 1.5.1 of the RFP as "[a]n entity that manages the coordination and provision of transportation services outlined in 42 C.F.R. § 440.170(a)(4) and can provide the services described in this RFP." The "transportation services outlined in 42 C.F.R. § 440.170(a)(4)" are "wheelchair vans, taxis, stretcher cars, bus passes and tickets, secured transportation containing an occupant protection system that addresses safety needs of disabled or special needs individuals, and

14

other forms of transportation otherwise covered under the state plan." 42 C.F.R. §
440.170(a)(4). Moreover, in an addendum to the RFP, LDH referred to Section
2.7.1.1, noting that "[t]he Proposer's experience as a Medicaid transportation
broker for a Medicaid MCO and/or FFS program will be considered."

In finding MediTrans failed to meet the mandatory qualifications of the
RFP, the district court concluded as follows:

> At issue is whether or not the State of Louisiana, through the
> Office of State Procurement and the affirmation by the Commissioner
> of Administration, failed to satisfy the mandatory requirements of the
> issued RFP and awarded the Single Transportation Broker contract to
> MediTrans, who according to [Southeastrans'] petition, did not meet
> said mandatory requirements. The Court, in its appellate review must
> first look at the mandatory qualification as set forth in the RFP. The
> RFP issued by the state set [forth] the Mandatory Qualifications for a
> proposer in [S]ection 2.6.1 of said RFP titled "Mandatory
> Qualifications" ....

> Pursuant to the RFP for the single statewide Transportation
> Broker contract, a Transportation Broker is an entity that manages the
> coordination and provision of transportation services outlined in 42
> C.F.R Section 440.170 (a)(4) and can provide the services described
> in this RFP. A Transportation Provider is defined as an appropriately
> credentialed and licensed individual, organization or other entity, and
> its employees and subcontractors that has signed Provider Agreement
> with the Contractor for the delivery of transportation services for the
> Louisiana Medicaid Program. The difference being that the broker
> can coordinate transportation providers whereas, a transportation
> provider, provides the service from its signed agreement with a
> transportation broker (which is what this RFP sought).

> Based on the language of the state issued RFP, it is clear that all
> three qualifications mandatory in order for a proposer to be awarded
> the Single Transportation Broker contract. If any one of the
> qualifications are not met, then the office of State Procurement should
> disqualify that proposer from consideration. In the case at bar, the
> record and evidence [show] that the evaluation team did, in fact, have
> questions regarding MediTrans' qualification under [S]ection 2.6.1.3.
> Having concerns about MediTrans' experience as a Transportation
> Broker, the Evaluations Team issued a Request for Clarification to
> MediTrans seeking more information about its Transportation Broker
> contracts. MediTrans listed their contract with Healthy Blue
> Louisiana. Although this contract qualified as a Medicaid
> Transportation Broker contract with a Medicaid MCO or FFS
> program, it did not meet the three[-]year requirement in that this
> contract began January 20, 2020. MediTrans' earliest contract would

15

have had to [have] been in effect on November 15, 2019 with a Medicaid MCO or FFS program for it to meet the mandatory requirement of the RFP, specifically [S]ection 2.6.1.3.

MediTrans argues that the RFP does not mention any requirement that the proposer demonstrate three years' experience as a Transportation Broker for a Medicaid MCO or FFS program and further argues that the RFP definition simply requires that the three elements be satisfied in order to comply with the definition. The Court after reviewing the plain language in the RFP finds that argument to be flawed, in that [S]ection 2.6.1.3 is inclusive of the mandatory qualifications for a proposer to be awarded a contract, not just for compliance with the definition.

From our *de novo* review of the record, we conclude the district court erred in effectively rewriting Section 2.6.1.3 to require a minimum of three years of experience providing transportation broker services to an MCO or FFS program when, in fact, no such requirement was provided for in the RFP.

There is no dispute that on January 24, 2022, LDH exercised its right pursuant to Section 1.9 of the RFP to request a clarification from MediTrans regarding several items in its proposal. One of the items addressed by LDH concerned MediTrans' past experience serving as a transportation broker. The Evaluation Team specifically requested that MediTrans provide "information about the contracts pursuant to which it has provided Transportation Broker services within the last five (5) years prior to January 4, 2022."

Two days later, MediTrans responded to the request, clarifying all of the items outlined by LDH in its request. In its response, MediTrans stated that it was founded in 2003 as a transportation provider and "experienced continual growth driven by additional contracts and clients, as well as steady year-over-year increases in trip volume with each client." The response continues, noting that in 2008, "MediTrans expanded the transportation services it provided and began providing transportation broker services to appropriately accommodate all incoming trip requests." Concerning its actual experience and contracts as a transportation broker, MediTrans' response continues as follows:

The demand for MediTrans to provide transportation broker services significantly increased to fulfill its contractual obligations to Genesis Behavioral Health, which began in 2013, and Our Lady of Lourdes' PACE Program, which began in 2017. In general, the company experienced significant growth through these contracts, requiring equal expansion of its brokering services to provide sufficient service-delivery.

In 2019, MediTrans was contracted by Healthy Blue Louisiana to provide Medicaid transportation broker services. Simultaneously, MediTrans made the executive decision to shift its core business operations and services to primarily focus on transportation brokering. Shortly thereafter, in 2021, MediTrans dissolved its transportation provider service lines, sold its fleet, and now operates solely as a Transportation Broker and Coordinated Transportation Network.

While not exclusively providing Medicaid transportation broker services, the historical information provided above and contractual obligations detailed below show that MediTrans has served as a transportation broker, rendering all the services outlined in 42 CR § 440.170(a)(4), for the past 14 years, including the previous five years.

As defined in the RFP, a transportation broker is an entity that manages the coordination and provision of transportation services outlined in 42 C.F.R. § 440.170(a)(4) and can provide the services described in this RFP. The regulation in reference indicates "services for any other medical care or remedial care recognized under State law and specified by the Secretary". As such, it is MediTrans' understanding that the definition of a transportation broker, provided in the RFP, does not specifically require a proposer to have provided Medicaid beneficiary transportation broker services for the specified minimum durations. Thus, by extension, MediTrans' qualifying experience as a transportation broker began in 2008 when it first began brokering trips to its transportation provider network.

We agree with LDH's Bureau of Legal Services that "the definition of a Transportation Broker is so general as to easily accommodate as 'Transportation Broker' services the work that was detailed by MediTrans on its clarification documentation." Moreover, as noted by the Commissioner in its decision below, the determination of "[w]hether MediTrans' experience was satisfactory or whether it was better or worse than any other proposer's" was entirely within the discretion of LDH and the Evaluation Team. Neither the district court nor this court on review can substitute its judgment for the good-faith judgment of the

17

administrative agency, and it was error for the district court to do so on this issue. See Catamaran, 174 So.3d at 690; Fleetcor, 30 So.3d at 110.

## CONCLUSION

For the above and foregoing reasons, we reverse the district court's May 26, 2023 judgment granting the petition for judicial review of plaintiff-appellee, Verida, Inc. f/k/a Southeastrans, Inc., and ordering the reversal of the proposed contract award to intervenor-appellant, Medi Trans, LLC, to serve as the single Transportation Broker for Non-Emergency Medical Transportation (NEMT) and Non-Emergency Ambulance Transportation (NEAT) services statewide. We reinstate the August 3, 2022 decision of the Commissioner of Administration denying the appeals of Verida, Inc. f/k/a Southeastrans, Inc. and Veyo, LLC and affirming the State of Louisiana, Department of Health's award of the transportation broker contract to intervenor-appellant, Medi Trans, LLC, pursuant to Request for Proposals No. 3000018038. All costs associated with this appeal are assessed to plaintiff-appellee, Verida, Inc. f/k/a Southeastrans, Inc.

**DISTRICT COURT'S MAY 26, 2023 JUDGMENT REVERSED; COMMISSIONER OF ADMINISTRATION'S AUGUST 3, 2022 DECISION REINSTATED.**